Modified.

30 C.C.P.A.(Patents)

## In re SHAFF.

### Patent Appeal No. 4730.

Court of Customs and Patent Appeals.

May 3, 1943.

N. D. Parker, Jr., of Washington, D. C., and A. R. McCrady, of South Bend, Ind., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

After having allowed seventeen claims of appellant's application for a patent relating to a carburetor, the Primary Examiner of the United States Patent Office finally rejected claims 32 to 37 inclusive, and upon appeal to the Board of Appeals the examiner's decision was affirmed. Appellant has here appealed from the decision of the board.

Appellant's invention relates to an improvement in a carburetor and particularly to that kind of carburetor adapted for use in an internal combustion engine, such as an automobile engine. Its chief usefulness is claimed to rest in the improved starting condition it imparts to an internal combustion engine. The carburetor has a choke valve, which is biased towards closed position by gravity and by a spring. The spring is connected to one end of a bi-metallic thermostatic element, and the other end is connected to a lever which is pivoted on the carburetor body. The other end of the lever is connected to a bellows which is responsive to engine intake pressure.

Claim 32 appears to be representative. It reads as follows: "32. In an internal combustion engine, a carburetor in which there is incorporated a choke valve which is so arranged that flow of air into the carburetor tends to open it, a passage connecting the carburetor with cylinders of the engine, an element actuated by variations in pressure within the passage, an element actuated by variations in temperature of the engine, means operatively interconnecting the first and second mentioned elements, and means operatively interconnecting the second mentioned element and the choke valve."

The references relied upon by the Patent Office tribunals are:

Heitger, 1,821,014, September 1, 1931.

Hifner, 1,630,614, May 31, 1927.

The Heitger patent relates to a carburetor and shows a choke valve biased towards closed position by a weight and by the action of a bi-metallic element which acts both as a spring and a thermostat. In Heitger's device, however, the thermostat is connected with an arm which is manually adjustable.

The patent to Hifner shows a carburetor having a choke valve which is biased towards closed position and which is operated by a pressure-responsive device connected with the engine intake. The latter device opens the choke valve when the engine is running, but the valve is kept closed during starting.

The Primary Examiner rejected all the appealed claims upon the patent to Heitger

in view of Hifner. After stating what both of these patents disclosed, he held that it would not amount to invention to follow the disclosures of the two patents and to construct appellant's carburetor.

The Board of Appeals, in discussing the references and making application of them, had the following to say:

"The Heitger patent shows a carburetor having an unbalanced choke valve in its intake passageway normally biased to closed position and adapted to be opened proportionally to air flow. The closing bias is provided by an arcuate element which serves both as a spring and as a thermostat. One end of this thermostatic spring is adjustably associated with the choke valve and the other with a manually adjustable arm by movement of which the bias may be changed when the engine starts. By the provision of certain stop shoulders on this arm and on a second crank arm connected to the choke valve, it is possible not only to change the bais but also to positively shift the choke valve to closed position.

"The Hifner patent shows a choke valve designed to be normally closed and connected to a fluid motor subject to manifold suction for opening the same when the engine starts to operate under its own power. In Hifner, no thermostatic spring is interposed between the control means and the choke valve as in Heitger.

"Heitger is deemed to show the broad combination involved in the claims on appeal, viz., an unbalanced choke valve normally biased to closed position by a combined spring and thermostatic means, the effectiveness of which may be varied by adjustment of one end of the thermostat in accordance with the operative condition of the engine. The difference is that, whereas Heitger provides manual means for making this adjustment, applicant provides automatic means in the form of a suction device associated with the intake manifold. Inasmuch as it was broadly old to thus automatically make a choke valve adjustment, as shown by Hifner, it was the examiner's view, with which we agree, that the use of a similar automatic means to change the bias on the Heitger choke, instead of the manual means disclosed, would not amount to invention.

"In making this substitution, the adjustment by stages contemplated by Heitger and appellant might not be attained but the claims on appeal would be satisfied, even if adjustment from maximum to minimum bias took place upon starting the engine, as in Hifner."

The appealed claims at one time constituted counts of three interferences. The appellant, Shaff, was senior party. Upon motions to dissolve those interferences, it was held by the Primary Examiner that the counts were unpatentable over Heitger in view of Hifner. Upon appeal by some of the parties, the Board of Appeals affirmed the action of the examiner in holding the counts unpatentable over said references and in dissolving said interferences.

Upon final rejection by the Primary Examiner of the claims at bar, appellant brought the question again before the Board of Appeals. It adhered to its views expressed in the former appeal and stated: " * * * On again carefully considering the question in view of the argument and brief presented, we are still of the opinion that the claims involve no more than the making of a manual operation automatic by the use of a means which has been used in a similar relation in the prior art."

We are in entire agreement with the decision of the board, and little need be said other than to approve of the language last quoted. It does not seem to us that it would involve invention to connect the Hifner automatic means to Heitger's manually operated means.

Appellant argues at length about the advantages derived from his device in that he adjusts the richness of his fuel mixture during the warming-up period. It is noted that the allowed claims seem fully to cover this feature of appellant's invention. Attention has been called to this fact by the examiner in his statement.

The decision of the Board of Appeals affirming that of the examiner in rejecting the appealed claims is affirmed.

Affirmed.